[No. B146014. Second Dist., Div. Three. July 12, 2001.]

In re JASMINE P. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Plaintiff and Respondent, v.
EBONY J., Defendant and Appellant.

**COUNSEL**

Andre F. F. Toscano, under appointment by the Court of Appeal, for Defendant and Appellant.

Lloyd W. Pellman, County Counsel, and Gary P. Gross, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**CROSKEY, Acting P. J.**—Ebony J.'s (Mother's) daughter, Jasmine P. (Jasmine), was placed in a legal guardianship with Jasmine's paternal grandmother (Grandmother). The order creating the legal guardianship did not specifically provide for any visitation between Mother and Jasmine. Mother contends that this was error, and seeks reversal of the order for that reason. We conclude there was no error, and affirm.

## Factual and Procedural Background[1]

Given the simple, primarily legal issue raised by this appeal, there is no need to go into all the facts related to Mother's involvement in the dependency system. The facts relevant here are just that Mother lost, and never successfully regained, legal custody of Jasmine, born in 1996. Mother had left Jasmine with Grandmother; Mother said it was by arrangement while she attended school; Grandmother and Jasmine's father said there had been no such arrangement, and that Jasmine had lived with Grandmother since she was four months old.

The juvenile court concluded that Jasmine could not be returned safely to Mother, and agreed with the Los Angeles County Department of Children and Family Services (DCFS) that the best permanent placement for her was a legal guardianship with Grandmother. The order, which was made on a form with boxes to be checked, stated that Jasmine was placed in a legal guardianship (and Grandmother signed the legal guardianship papers), but it also said Jasmine was placed in long-term foster care. The order made no provision for visitation between Mother and Jasmine, nor did it make any findings that visitation would be detrimental.

## Contentions on Appeal

Mother contends that the juvenile court erred by failing to make an order for continuing visitation between Mother and Jasmine. Although she did not seek such an order at the trial court level, but instead raises the issue for the first time on appeal, she asserts that because the juvenile court had a mandatory duty either to make such an order or to find that visitation would be detrimental, she has not waived the issue on appeal.

## Discussion

Welfare and Institutions Code section 366.26 provides that the juvenile court must choose among the best of three possible alternatives when a dependent child cannot be returned to his or her parent or parents. Pursuant to section 366.26, subdivision (b), in choosing among these alternatives "the court shall proceed pursuant to subdivision (c) [of section 366.26]."[2] Subdivision (c)(4) provides, "If the court finds that adoption of the child or

[1]We recite facts taken from the clerk's and reporter's transcripts.

[2]Section 366.26, subdivision (c) provides, in complete, and lengthy, part: "(c)(1) If the court determines, based on the assessment provided as ordered under subdivision (i) of Section 366.21 or subdivision (b) of Section 366.22, and any other relevant evidence, by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption. The fact that the child is not

termination of parental rights is not in the best interest of the child, because one of the conditions in subparagraph (A), (B), (C), or (D) of paragraph (1)

yet placed in a preadoptive home nor with a relative or foster family who is prepared to adopt the child, shall not constitute a basis for the court to conclude that it is not likely the child will be adopted. A finding under subdivision (b) or paragraph (1) of subdivision (e) of Section 361.5 that reunification services shall not be offered, under subdivision (e) of Section 366.21 that the whereabouts of a parent have been unknown for six months or that the parent has failed to visit or contact the child for six months or that the parent has been convicted of a felony indicating parental unfitness, or, under Section 366.21 or 366.22, that the court has continued to remove the child from the custody of the parent or guardian and has terminated reunification services, shall constitute a sufficient basis for termination of parental rights unless the court finds a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances: [¶] (A) The parents or guardians have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship. [¶] (B) A child 12 years of age or older objects to termination of parental rights. [¶] (C) The child is placed in a residential treatment facility, adoption is unlikely or undesirable, and continuation of parental rights will not prevent finding the child a permanent family placement if the parents cannot resume custody when residential care is no longer needed. [¶] (D) The child is living with a relative or foster parent who is unable or unwilling to adopt the child because of exceptional circumstances, that do not include an unwillingness to accept legal or financial responsibility for the child, but who is willing and capable of providing the child with a stable and permanent environment and the removal of the child from the physical custody of his or her relative or foster parent would be detrimental to the emotional well-being of the child. This subparagraph does not apply to any child who is living with a nonrelative and who is either (i) under six years of age or (ii) a member of a sibling group where at least one child is under six years of age and the siblings are, or should be, permanently placed together. If the court finds that termination of parental rights would be detrimental to the child pursuant to subparagraph (A), (B), (C), or (D), it shall state its reasons in writing or on the record. [¶] (2) The court shall not terminate parental rights if at each and every hearing at which the court was required to consider reasonable efforts or services, the court has found that reasonable efforts were not made or that reasonable services were not offered or provided. [¶] (3) If the court finds that termination of parental rights would not be detrimental to the child pursuant to paragraph (1) and that the child has a probability for adoption but is difficult to place for adoption and there is no identified or available prospective adoptive parent, the court may identify adoption as the permanent placement goal and without terminating parental rights, order that efforts be made to locate an appropriate adoptive family for the child within a period not to exceed 180 days. During this 180-day period, the public agency responsible for seeking adoptive parents for each child shall, to the extent possible, contact other private and public adoption agencies regarding the availability of the child for adoption. During the 180-day period, the public agency shall conduct the search for adoptive parents in the same manner as prescribed for children in Sections 8708 and 8709 of the Family Code. At the expiration of this period, another hearing shall be held and the court shall proceed pursuant to paragraph (1), (3), or (4) of subdivision (b). For purposes of this section, a child may only be found to be difficult to place for adoption if there is no identified or available prospective adoptive parent for the child because of the child's membership in a sibling group, or the presence of a diagnosed medical, physical, or mental handicap, or the child is the age of seven years or more. [¶] (4) If the court finds that adoption of the child or termination of parental rights is not in the best interest of the child, because one of the conditions in subparagraph (A), (B), (C), or (D) of paragraph (1) or in paragraph (2) applies, the court shall either order that the present caretakers or other appropriate persons shall become legal guardians of the child or order that

or in paragraph (2) applies, the court shall either order that the present caretakers or other appropriate persons shall become legal guardians of the child or order that the child remain in long-term foster care. Legal guardianship shall be considered before long-term foster care, if it is in the best interests of the child and if a suitable guardian can be found. When the child is living with a relative or a foster parent who is willing and capable of providing a stable and permanent environment, but not willing to become a legal guardian, the child shall not be removed from the home if the court finds the removal would be seriously detrimental to the emotional well-being of the child because the child has substantial psychological ties to the relative caretaker or foster parents. *The court shall also make an order for visitation with the parents or guardians unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child.*" (Italics added.)

As DCFS points out, when subdivision (c)(4) of Welfare and Institutions Code section 366.26 is read in the context of the entire section, it is apparent that it was only intended to require either an order of visitation or a finding of detriment to the child where a particular circumstance exists. Specifically, *if* a dependent child has been living with a relative or a foster parent who will provide a stable and permanent environment, but who is not willing to become a legal guardian, *then* the child shall not be removed from that home, if to do so would be detrimental. And in that circumstance, where the child is left in long-term foster care and *not* in a legal guardianship, *then* the juvenile court shall order visitation with the *parents or guardians* unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child.

That is not the situation here. Jasmine was not left in long-term foster care with a relative caretaker or foster parent who was not willing to become a legal guardian. Instead, Grandmother was willing to, and did, become Jasmine's legal guardian. So, by its own terms, Welfare and Institutions Code section 366.26, subdivision (c)(4) did not mandate that the juvenile court order Grandmother, as legal guardian, to arrange visitation between

the child remain in long-term foster care. Legal guardianship shall be considered before long-term foster care, if it is in the best interests of the child and if a suitable guardian can be found. When the child is living with a relative or a foster parent who is willing and capable of providing a stable and permanent environment, but not willing to become a legal guardian, the child shall not be removed from the home if the court finds the removal would be seriously detrimental to the emotional well-being of the child because the child has substantial psychological ties to the relative caretaker or foster parents. The court shall also make an order for visitation with the parents or guardians unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child."

Jasmine and Mother. And because the juvenile court was not mandated to make the order (or an alternative finding of detriment), it did not err by failing to do so in the absence of any request therefor by Mother.

## DISPOSITION

The order is affirmed.

Kitching, J., and Aldrich, J., concurred.

On August 13, 2001, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 10, 2001.