133 Cal.Rptr.2d 773 (2003)
108 Cal.App.4th 616
In re J.H. et al., Persons Coming Under the Juvenile Court Law.
Santa Clara County Department of Family and Children's Services, Plaintiff and Respondent,
v.
S.G., Defendant and Appellant.
No. H025258.
Court of Appeal, Sixth District.
May 9, 2003.
Rehearing Denied May 30, 2003.
*774 Ann Miller Ravel, County Counsel, Teri L. Robinson, Deputy County Counsel, for Plaintiff/Respondent Santa Clara County Department of Family and Children's Services.
George W. Kennedy, District Attorney, Robert J. Masterson, Deputy District Attorney, for Respondent Children J.H. et al.
Sixth District Appellate Program, Jonathan Grossman, Stockton, for Defendant/Appellant S.G.
PREMO, Acting P.J.
After the juvenile court appointed a legal guardian for 12-year-old J.H. and his eight-year-old brother C.H., the court ordered "reasonable" visitation with their mother S.G. (Mother) and terminated the dependency. The visitation order gave the legal guardian discretion to determine the time, place, and manner of the visits. Mother appeals from that order contending that the court impermissibly delegated its authority to the guardian. We shall affirm.

A. PROCEDURAL AND FACTUAL BACKGROUND
J.H. and CH. were taken into protective custody on October 30, 1998. The two *775 boys were initially returned to their mother, but her compliance with the case plan was inconsistent. The court finally removed the children from Mother's custody when she kicked and beat J.H. and threatened to kill him. Mother moved out of her parents' home, where she had been living with her two boys, and the court placed the boys with their grandparents.
The Santa Clara County Department of Family and Children's Services (the Department) provided reunification services for the next 18 months. Mother's compliance with the case plan continued to be inconsistent and the Department became concerned about reports of violence between Mother and her new husband. The juvenile court terminated reunification services on April 25, 2001 and set a hearing pursuant to Welfare and Institutions Code section 366.26.[1] On June 12, 2002, the juvenile court entered its order appointing the maternal grandmother as the boys' legal guardian.[2] The court ordered supervised visitation with Mother once a week for two hours, at minimum.
A review hearing was held on October 16, 2002 to consider dismissing the case. The Department recommended a visitation plan that would allow supervised visitation at the discretion of the maternal grandparents. Mother objected to the recommendation stating that she wanted it "made more clear." She pointed out she had only one visit in July and one in August but that "[r]ecently it's been going okay." The boys' grandmother explained that visitation was complicated by the fact that Mother lived in the next town and did not have a telephone or a car. Grandmother generally drove the boys to visit Mother, sometimes unannounced because she could not telephone ahead. Grandmother also explained that sometimes the boys had activities they wanted to do on the weekends. It was agreed that the boys enjoyed visits with their mother when they did occur.
After hearing from the parties, the court ordered visitation as follows: "Mother is entitled to reasonable visitation consistent with the well-being of the minors. Guardian to have discretion to determine time, place and manner."

B. ISSUES
1. When a legal guardianship is ordered, does section 366.26, subdivision (c)(4) (hereafter subd. (c)(4)) require the juvenile court to order visitation with the parent(s) absent a finding of detriment?
2. When a legal guardianship is ordered, does an order for "reasonable visitation consistent with the well-being of the minor" and granting discretion to the guardian to determine the time, place, and manner of the visits impermissibly delegate the authority of the juvenile court?

C. DISCUSSION

1. Is the Juvenile Court Required to Make a Visitation Order?
Mother contends that subdivision (c)(4) requires the juvenile court to make a visitation order when a minor is placed in a legal guardianship unless the court finds visitation would be detrimental to the child. She argues that because the court must make a decision about visitation, the court may not delegate its authority by *776 giving unfettered discretion to the guardian.[3] (In re Randalynne G. (2002) 97 Cal. App.4th 1156, 1163, 118 Cal.Rptr.2d 880 (Randalynne G.).) The Department and the children argue that the visitation order required by subdivision (c)(4) applies only when the child is placed in long-term foster care; in the case of guardianship, the juvenile court may entirely delegate the decision. (In re Jasmine P. (2001) 91 Cal.App.4th 617, 110 Cal.Rptr.2d 562 (Jasmine P.).) We conclude that the visitation order required by subdivision (c)(4) applies whether the child is placed in foster care or in a guardianship.
Subdivision (c)(4) provides: "If the court finds that adoption of the child or termination of parental rights is not in the best interest of the child, ... the court shall either order that the present caretakers or other appropriate persons shall become legal guardians of the child or order that the child remain in long-term foster care. Legal guardianship shall be considered before long-term foster care, if it is in the best interests of the child and if a suitable guardian can be found. When the child is living with a relative or a foster parent who is willing and capable of providing a stable and permanent environment, but not willing to become a legal guardian, the child shall not be removed from the home if the court finds the removal would be seriously detrimental to the emotional well-being of the child because the child has substantial psychological ties to the relative caretaker or foster parents. The court shall also make an order for visitation with the parents or guardians unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child." (Italics added.)
Subdivision (c)(4) refers generally to cases in which adoption has been rejected as a permanent plan. The first sentence of the subdivision requires the juvenile court to decide between placing the child in long-term foster care or in a legal guardianship. The subdivision then limits the court's discretion in that choice by designating legal guardianship as the preferred placement. The next sentence instructs the court to disregard that statutory preference for guardianship and to select long-term foster care under certain circumstances. The final sentence provides that the court shall also make an order for visitation. Thus, the subdivision requires two orders: an order for placement (either guardianship or long-term foster care) and an order for visitation. The language between the two referenced orders circumscribes the court's discretion in making the first order. The word "also" in the final sentence signals the reader that there is another thing the court must do besides select the form of placement, that is, order visitation. Thus, the visitation decision is not connected to the discussion of when to choose foster care over guardianship. Rather, it is simply one of the two orders the court is required to make when it determines that adoption is not in the best interest of the child.
Jasmine P., supra, presumed that because subdivision (c)(4) referred to visitation with "the parents or guardians" a visitation order was required only when the child is placed in long-term foster care. (Jasmine P., supra, 91 Cal.App.4th at p. 621, 110 Cal.Rptr.2d 562.) In our view, the reference to visitation with "parents or guardians" merely acknowledges that a child may be removed from the custody of a parent or guardian and that it may be *777 desirable that the guardian from whom a child was removed be entitled to visitation when the child is placed with another guardian. This interpretation is consistent with the rest of the dependency statutes, commencing with section 300, which provide that a child may be adjudged a dependent child of the court when the child's parent or guardian harms or fails to protect the child. (§ 300, subds.(a), (b), (c), (d), (f), (i).)
There is no reason that we can see for ordering visitation when a child is placed in long-term foster care but not when a child is placed with a legal guardian. In neither case are parental rights terminated. And in some cases the very reason for rejecting adoption as a permanent plan relates to the court's determination that continued visitation with the child is desirable. That is, section 366.26, subdivision (c)(1)(A) permits the court to reject adoption as a permanent plan if the parents or guardians have visited the child regularly and the child would benefit from continuing the relationship. If the juvenile court determines that adoption is not in the child's best interest because continued visitation with the parent would be beneficial, subdivision (c)(4) requires the court to prefer legal guardianship as the permanent placement. In such a situation the court will certainly want to order visitation with the parent. Furthermore, we are aware that situations can and do arise where the legal guardian takes a position adverse to the parent from whom the child has been removed. In such a case, unless the court has made an order concerning visitation, the guardian and not the juvenile court, would make the visitation decision. This would be inconsistent with whatever parental rights do remain after termination of the dependency.
We conclude that subdivision (c)(4) imposes a duty on a court to make an order for visitation in cases in which a minor has been placed in either long-term foster care or legal guardianship unless the court finds that visitation would be detrimental to the child's physical or emotional well-being.

2. Does the Order Impermissibly Delegate Authority to the Guardian?
As we have noted, the order at issue is: "Mother is entitled to reasonable visitation consistent with the well-being of the minors. Guardian to have discretion to determine time, place and manner." Mother contends that although the order acknowledges that she has a right to visitation it fails to define the extent of that right. Citing In re Jennifer G. (1990) 221 Cal.App.3d 752, 755, 270 Cal.Rptr. 326 (Jennifer G), Mother argues that determining the frequency of visitation is a judicial function that must be exercised by the court. She urges us to remand the matter for the juvenile court to more clearly define her right to visitation such as by requiring minimal weekly or monthly visits.
We agree that the visitation order must specify whether visitation will occur. (Randalynne G., supra, 97 Cal.App.4th 1156, 118 Cal.Rptr.2d 880; Jennifer G., supra, 221 Cal.App.3d at p. 756, 270 Cal. Rptr. 326.) A juvenile court does not fulfill its duty to decide if visitation should occur if it orders that visitation "`shall be ... as directed by the legal guardian(s)'" (Randalynne G., supra, 97 Cal.App.4th at pp. 1162-1163, 1165, 118 Cal.Rptr.2d 880) or that it shall "`be under the direction of the Department Social Services'" (Jennifer G., supra, 221 Cal.App.3d at pp. 755, 757, 270 Cal.Rptr. 326). Nor may the juvenile court give the children absolute discretion to decide if the mother could visit them. (In re Julie M. (1999) 69 *778 Cal.App.4th 41, 48-49, 81 Cal.Rptr.2d 354.) Orders such as these permit the persons or agency to which the decision is delegated to decide whether any visitation will take place. That is the fundamental judicial decision that the court may not delegate. The instant order does not do that. The juvenile court expressly stated that Mother is "entitled to reasonable visitation."
On the other hand, the decision as to the time, place, and manner of the visits may be delegated. As Jennifer G. pointed out, these are "the ministerial tasks of overseeing the right as defined by the court. These tasks can, and should, be delegated to the entity best able to perform them,...." (Jennifer G., supra, 221 Cal.App.3d at p. 757, 270 Cal.Rptr. 326.)
The only remaining issue is whether the juvenile court's requirement that the visitation be "reasonable" and "consistent with the well-being of the minors" is sufficiently clear to provide guidance. We find that it is.
Jennifer G. held that when the juvenile court has the duty to determine whether visitation will take place, the court must define the rights of the parties with respect to that visitation. The court stated: "The definition of such a right necessarily involves a balancing of the interests of the parent in visitation with the best interests of the child. In balancing these interests, the court in the exercise of its judicial discretion should determine whether there should be any right to visitation and, if so, the frequency and length of visitation. The court may, of course, impose any other conditions or requirements to further define the right to visitation in light of the particular circumstances of the case before it." (Jennifer G., supra, 221 Cal.App.3d at p. 757, 270 Cal.Rptr. 326.) In re Moriah T. (1994) 23 Cal.App.4th 1367, 28 Cal.Rptr.2d 705 (Moriah T.) disagreed with the dictum of Jennifer G. suggesting that the court must specify the frequency and length of the visits, pointing out that visitation arrangements "demand flexibility." (Id. at p. 1376, 28 Cal.Rptr.2d 705.) Moriah T. affirmed a visitation order that did not specify the frequency and length of visitation but instead required visits "`regularly' " and delegated to Child Protective Services (CPS) the responsibility to arrange for and monitor visitation "`consistent with the well-being of the minor[s]'" and "`at the discretion of [CPS] as to the time, place and manner.'" (Id. at pp. 1374-1375, 28 Cal.Rptr.2d 705.)
In re Christopher H. (1996) 50 Cal. App.4th 1001, 57 Cal.Rptr.2d 861 (Christopher H.) affirmed the juvenile court's order that the Department of Social Services permit the father to have "`reasonable'" supervised visits with the minor. The father had argued the order was an improper delegation of the court's power to determine his right to visitation because it did not provide any guidance as to what was reasonable. (Id. at p. 1008, 57 Cal.Rptr.2d 861.) But the appellate court pointed out that only when the court delegates the discretion to determine whether any visitation will occur does the court improperly delegate its authority. (Id. at p. 1009, 57 Cal.Rptr.2d 861.)
Both Christopher H. and Moriah T. involved visitation orders that were made in connection with reunification services. Under those circumstances, the court must order visitation to be "as frequent as possible, consistent with the well-being of the child." (§ 362.1, subd. (a)(1)(A).) The purpose of ordering visitation in those circumstances is to maintain familial ties and "to provide information relevant to deciding if, and when, to return a child to the custody of his or her parent or guardian, (§ 362.1, subd. (a).) *779 After services are terminated, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point "the focus shifts to the needs of the child for permanency and stability." (In re Marilyn H. (1993) 5 Cal.4th 295, 309, 19 Cal.Rptr.2d 544, 851 P.2d 826.)
In establishing the guardianship and terminating jurisdiction, the court gives the guardian significantly greater autonomy in making decisions for the children than she would have as a foster parent. The guardian is expected to provide for the care, custody, control and education of the children until they reach the age of majority. (See "Guardianship Pamphlet" Judicial Council Form JV-350.) With some exceptions, the guardian has "the same authority with respect to the person of the ward as a parent having legal custody of a child and may exercise such authority without notice, hearing, or court authorization, instructions, approval, or confirmation in the same manner as if such authority were exercised by a parent having legal custody of a child." (Prob.Code, § 2108, subd. (a).) This is in contrast with a foster parent who is continuously supervised by the Department and the juvenile court. Accordingly, the need for flexibility in the context of a legal guardianship is at least as great if not much greater than it is in the case where reunification is still being pursued.
Flexibility is particularly necessary in the present case. At eight and 12 years old the boys' developmental needs change rapidly. As time goes on they likely will have more and more school and social activities that would conflict with a specific schedule. In addition, Mother does not live close by and has no telephone and no car, making it difficult for the guardian to arrange a visit to Mother and difficult for Mother to come and visit the boys. Given the several factors affecting the timing and desirability of visitation, a workable visitation order that specified the frequency and duration of visits would be difficult to craft.
We note, too, that termination of dependency jurisdiction does not mean that the guardian will be totally beyond the control of the juvenile court. The court continues to have the power to regulate and control the guardian through its jurisdiction over the guardianship. (See § 366.4; Cal. Rules of Court, rule 1466(c); Prob.Code, § 2102; In re Twighla T. (1992) 4 Cal. App.4th 799, 806, 5 Cal.Rptr.2d 752.) If the guardian abuses the discretion the court has granted or if visitation is no longer in the best interests of the children, the juvenile court may be called upon to modify the visitation order.
In sum, since the juvenile court determined that reasonable visitation should take place, we conclude that it is not an impermissible delegation of judicial authority to permit the guardian to use her judgment in making sure the frequency and duration of the visits are in the children's best interests, consistent with their developmental needs.

D. DISPOSITION
The order of the juvenile court is affirmed.
WE CONCUR: BAMATTRE-MANOUKIAN and WUNDERLICH, JJ.
NOTES
[1] Hereafter all statutory references are to the Welfare and Institutions Code.
[2] Mother has appealed three prior orders in this matter. We have taken judicial notice of the record in those cases: H023641 (dismissed), H023944 (Jul. 25, 2002 [nonpub. opn.]), and H024581 (Jan. 7, 2003 [nonpub. opn.] ). Our recitation of the facts and procedural background is taken from our review of the combined record in these cases.
[3] This issue is presently on review in the Supreme Court. (In re S.B. (2002) 103 Cal. App.4th 739, 127 Cal.Rptr.2d 67; review granted Jan. 22, 2003, No. S112260.)