Filed 5/15/25  In re Z.S. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re Z.S.,<br><br>A Minor Coming Under the Juvenile Court Law,<br>_____<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent<br><br>v.<br><br>NELSON D.,<br><br>    Defendant and Appellant. | B339297<br>(Consolidated with B342460)<br><br>(Los Angeles County Super. Ct. No. 23CCJP00075D) |

APPEAL from an order of the Superior Court of Los Angeles County, Tiana J. Murillo, Judge.  Affirmed.

Office of the County Counsel, Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

California Appellate Project, Jennifer Peabody, Acting Executive Director, and Kristie A. Lutz, Staff Attorney, under appointment by the Court of Appeal, for Defendant and Appellant.

* * * * * *

In this dependency appeal, Nelson D. (father) appeals the juvenile court's dispositional order denying him enhancement services as well as its exit order that does not provide for visitation with his infant daughter. Because father's challenges lack merit or have been forfeited, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

Father and Ana S. (mother) are unmarried and have one child together, Z.S.[1] (born January 2024).[2] At the time of Z.S.'s

---

[1] The briefing on appeal is inconsistent as to Z.'s last initial. In the juvenile court, her parents listed her initials as Z.S.D., reflecting both mother's (S.) and father's (D.) last names. Father's briefing refers to her as Z.S., while the Department's brief refers to her as Z.D. We will stick with father's usage.

[2] Mother has four older children, none of whom are in her care or subject to this appeal. Father has one older biological child, but his parental rights over that child were terminated by the juvenile court in a separate proceeding in February 2024.

birth, father was incarcerated and has since remained incarcerated.

When born, Z.S. tested positive for methamphetamine, amphetamine, opiates and morphine, indicating exposure to those drugs sometime in the final trimester of pregnancy. Mother admitted that she had a history of substance abuse, including the use of methamphetamine, but she claimed to have stopped using when she realized she was pregnant just weeks before Z.S. was born.

Mother herself tested negative for any drugs at the time of Z.S.'s birth.

## II. Procedural Background

### A. *Petition*

On March 12, 2024, the Los Angeles County Department of Children and Family Services (the Department) filed a petition asking the juvenile court to exert dependency jurisdiction over Z.S. on the grounds that (1) Z.S. tested positive "for opiates and morphine" at the time of birth, and (2) mother had a "history of substance abuse" and was a "current abuser of methamphetamine, amphetamine, opiates and morphine," both of which placed Z.S. "at risk of serious physical harm, damage and danger" (thereby rendering dependency jurisdiction appropriate under subdivisions (b) and (j) of Welfare and Institutions Code section 300).[3]

At a March 26, 2024, initial hearing, the juvenile court permitted Z.S. to remain in mother's custody, found father to be

---

[3] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

Z.S.'s biological father, and ordered that father have virtual visits once per week.

**B.      *Jurisdiction and disposition***

On May 14, 2024, the juvenile court held a combined jurisdictional and dispositional hearing.  Mother pled no contest to a single allegation of having a "history of substance abuse, including methamphetamine[ and] amphetamine" and to being "a recent user" of both, thereby warranting the exertion of jurisdiction under subdivision (b) of section 300.[4]  The remaining allegations were dismissed.

The court permitted Z.S. to remain in mother's custody.  The court ordered family maintenance services for mother consisting of drug and alcohol services and individual counseling.  After acknowledging its discretion to order enhancement services for father, the court elected not to do so, reasoning that such services would not be in Z.S.'s best interests given the "practical difficulties" posed by father's incarceration and the fact that the family was willing and able to facilitate visitation regardless.  The court granted father virtual visitation once a week and in-person visitation once a month so long as father remained incarcerated locally.

**C.      *First appeal***

Father timely appealed the denial of enhancement services.

**D.      *Termination of jurisdiction and issuance of exit order***

On November 12, 2024, the juvenile court held a six-month review hearing pursuant to section 364.  In its pre-hearing report

---

4      The presence of opiates and morphine in Z.S.'s urine and stool, respectively, could have been triggered by drugs administered to mother during labor and delivery.

4

served on father, the Department recommended that the court (1) terminate jurisdiction, (2) award sole legal and physical custody of Z.S. to mother, and (3) grant father monitored visitation. The report noted that father had been unable to video call with Z.S., and had been "inconsistent" in calling mother pursuant to the visitation order and had not followed the agreed-upon schedule (father would call on the wrong days or not at all).

At the review hearing, father's counsel objected to the termination of jurisdiction. Mother argued in favor of termination, her sole custody of Z.S., and that father have *no* visitation due to his status as solely a biological father as well as his failure to "follow[] the visitation schedule." The Department offered no further argument in support of father's visitation.

The juvenile court terminated dependency jurisdiction over Z.S., finding that the conditions justifying jurisdiction no longer existed due to mother's substantial progress in her drug treatment program. The court issued an exit order awarding mother sole legal and physical custody and awarding father no visitation; with respect to visitation, the court explained that father had "not . . . been availing himself" of the previously ordered visitation "even with [Department] follow-up."

Father did not object to the court's decision at the hearing.

### E.    *Second appeal*

Father timely appealed the juvenile court's exit order, and we consolidated both of father's appeals.

## DISCUSSION

On appeal, father challenges the juvenile court's order denying him enhancement services and the portion of its exit order denying him visitation.

5

## I. Dispositional Order Denying Enhancement Services

Where, as here, a juvenile court exercises dependency jurisdiction over a child but leaves the child in the custody of one parent, the court has the discretion to order the Department to provide "enhancement" services to the other, noncustodial parent. (§§ 362, subd. (c), 361.5, subd. (a); *In re A.C.* (2008) 169 Cal.App.4th 636, 642, fn. 5.) These enhancement services are meant to "enhance the child's relationship with that parent by requiring that parent to address the issue that brought the child before the court," thereby serving the best interest of the child. (*Ibid.*; *In re C.S.* (2022) 80 Cal.App.5th 631, 636-637; *In re Destiny D.* (2017) 15 Cal.App.5th 197, 212-213 (*Destiny D.*).) We review the denial of such services for an abuse of discretion. (*C.S.*, at p. 637; *Destiny D.*, at p. 213.)

The juvenile court did not abuse its discretion in denying father enhancement services. Enhancement services are discretionary, particularly as to biological fathers. (See *In re Zacharia D.* (1993) 6 Cal.4th 435, 439 (*Zacharia D.*) [biological fathers are not entitled to reunification services when a child is fully removed from parental custody].) The court did not abuse its discretion in declining to order enhancement services to *father* because such services would not "address the issue that bought [Z.S.] before the court," as that issue in this case was *mother's* substance abuse. What is more, the court also properly considered that there were too many "practical difficulties" in delivering services during father's incarceration as well as the family's willingness to facilitate visitation with or without father receiving services.

Father argues that he is unlike the incarcerated father in *Zacharia D.*, *supra*, 6 Cal.4th 435 who had "no relationship with

6

the child" and had "done almost nothing to develop [that] relationship," and thus who was properly denied reunification services. (*Id.* at pp. 455-456.) But *Zacharia D.* did not purport to set the boundaries of when services may be denied. More to the point, *Zacharia D.* does not undermine the juvenile court's appropriate reasons for denying enhancement services.

## II. Exit Order Denying Visitation

Father levels two types of challenges to the juvenile court's exit order denying him visitation rights—one procedural, one substantive. Father makes the procedure-based argument that he was not given advance notice or a meaningful hearing (and was hence denied due process) because he did not learn—until the hearing itself—that mother would be asking for an exit order that would change his visitation rights from monitored visits to no visits. Father also makes the substantive argument that the court abused its discretion by declining to grant him mandatory visitation rights in the exit order.[5] Father has forfeited both arguments. Because father does not dispute that he received advance notice of the section 364 review hearing as well as the Department's intention to seek termination of dependency jurisdiction at that hearing, father's notice argument is premised solely on the absence of advance notice of mother's position regarding visitation, yet once mother stated her position at the hearing, father did not object or otherwise request a continuance to respond more fully. This constitutes a forfeiture of his

---

[5] We note that nothing in the juvenile court's order *prohibits* father from visiting with Z.S. either in person or virtually, and that, should father's circumstances change, he is free to petition for a modification of the visitation order. (§ 302, subd. (d); see *Heidi S. v. David H.* (2016) 1 Cal.App.5th 1150, 1172.)

7

objection to the lack of advance notice as well as to the merits of the juvenile court's visitation order.  (E.g., *People v. Abilez* (2007) 41 Cal.4th 472, 521, fn. 12 [denial of notice resulting in alleged due process violation is forfeited for failure to object]; *In re S.B.* (2004) 32 Cal.4th 1287, 1293, superseded by statute on other grounds as stated in *In re S.J.* (2008) 167 Cal.App.4th 953.)

## DISPOSITION

The dispositional and exit orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.

HOFFSTADT


We concur:


_____, J.

BAKER


_____, J.

KIM (D.)